(C. D. 622)

H. C. Donaldson & Co. *v.* United States

United States Customs Court, First Division

(Decided April 29, 1942)

*Harper & Harper* (*Abraham Gottfried* of counsel) for the plaintiffs.
*Paul P. Rao,* Assistant Attorney General (*Joseph A. Howard, Jr.,* and *Richard F. Weeks,* special attorneys), for the defendant.

Before Oliver and Walker, Judges

Walker, Judge: This is a suit brought against the United States at the port of Los Angeles to recover certain money claimed to have been illegally exacted as customs duties on an importation in 1937 of coke from Germany. Free entry was accorded the merchandise under the provisions of paragraph 1650 of the Tariff Act of 1930, but the collector imposed a tax at the rate of 10 cents per 100 pounds

under the provisions of section 601 (c) (5) of the Revenue Act of 1932 on the entire imported weight of 8,955,800 pounds. So far as pertinent, said section reads as follows:

SEC. 601. EXCISE TAXES ON CERTAIN ARTICLES

   *        *        *        *        *        *        *

(c)  *  *  *

(5) Coal of all sizes, grades, and classifications (except culm and duff), coke manufactured therefrom; and coal or coke briquettes, 10 cents per 100 pounds.  *  *  *

Two claims are made in the protest. The first is that all of the coke in question is entitled to entry free of the tax imposed under the revenue act, *supra*, the basis of this claim being that it consists of coke made from culm and duff, which are excepted from the provisions of section 601 (c) (5), *supra*, and it is contended that coke made therefrom is likewise excepted; and the second claim, made in the alternative, is that no tax should have been imposed on that portion of the merchandise which consists of so-called "fines" or "breeze" on the ground that such portion is not coke, and hence is not taxable under the provision for coke.

The only witness called to testify was E. L. Brumley, a partner in the plaintiff firm, the business of which is importing. He testified that his firm had imported coke since 1928 from various foreign countries for sale in the United States to steel plants and foundries. With respect to the first claim made by plaintiff the witness testified that he personally placed the orders for the coke in issue while he was in Europe and had inspected the plant at which it was made, although not at the time the particular shipment of coke was manufactured. He then stated that at such plant they used culm and duff, known as "slack" coal, for the production of coke; that such culm and duff is the refuse which drops through a half-inch screen when commercial coal is being screened, and that it is used in the manufacture of coke for two reasons: (1) because it is a coking coal, i. e., better adapted to making coke than other coals, and (2) because in Europe such material, which would be considered worthless here, is put to use for reasons of thrift.

As it appears in the Revenue Act of 1932, the provision in question reads, so far as pertinent, as follows:

Coal of all sizes, grades, and classifications (except culm and duff), coke manufactured therefrom; and coal or coke briquettes, 10 cents per 100 pounds.

From a purely grammatical point of view it would appear that the word "therefrom" refers back to the entire preceding clause "Coal of all sizes, grades, and classifications (except culm and duff)," and that by the provision it was intended to exclude from the imposition of the

tax coke made from culm and duff.  A perusal of the legislative history of the provision, however, indicates otherwise.

As originally passed by the House of Representatives the provision in question reads:

That an excise tax shall be levied, collected, and paid upon the hereinafter described articles when imported from any foreign country into the United States; Coal (anthracite or bituminous), coke, or coal or coke briquettes, 10 cents per 100 pounds.

In the Senate the bill containing the provision was referred to the Committee on Finance, and in the report of that Committee it was proposed to amend the provision to read as it now appears in the act as quoted at the beginning of this opinion.  It is noted that in the report accompanying the amendment the purpose thereof is thus described:

The coal paragraph has been broadened to cover all sizes, grades, and classifications *of coal.* .(Congressional Record, 72nd Cong., 1st Sess., Vol. 75, Pt. 9, p. 10097.)  [Italics added.]

The amendment reported by the Committee was adopted by the Senate (Cong. Record. id., pt. 10, pp. 10782, 10799), and in the conference report the following statement was made prior to agreement by the House to the Senate amendment:

This amendment makes it clear that the tax *on coal* shall apply to all sizes, grades, and classifications of coal other than culm and duff.  (Cong. Record, id., Pt. 11, p. 12006)

It is thus clear that in adopting the amendment it was the purpose of Congress to define the scope of the tax on coal only, and that there was not any purpose to limit the scope of the tax on coke so as to exclude therefrom coke made from culm and duff coal.  From the record of debate it does not appear that that subject engaged the attention of the lawmakers.

Support for this construction of the language used in section 601 (c) (5), *supra,* is found in the record evidence, which indicates that in foreign countries coke is manufactured only from culm and duff or a small grade of coal.  As pointed out in defendant's brief—

Obviously, if coke is manufactured in foreign countries from a grade of tax-free coal—and that is what the present record indicates—the provision for a tax on imported coke would never apply.  In other words, if plaintiff's contention is upheld, the Congress will have provided for a tax on a subject which does not exist.

We therefore hold plaintiff's first claim to be without merit, and pass to a consideration of the second, or alternative, claim, viz, that that portion of the importation which consisted of so-called fines or breeze, and segregated at the time of importation or thereafter, is

entitled to free entry since it is neither coal nor coke manufactured therefrom.

In support of this claim plaintiff's witness Brumley testified that fines or breeze are material which results from the disintegration of pieces of coke as they rub together during handling; that the terms refer to material a half-inch or smaller in size; that fines or breeze cannot be used for the purposes for which coke is used, and that they must be segregated from the coke before the latter can be marketed. Fines and breeze, he said, are sold all over the United States as a road fill, but lacking such sale they are given away or dumped at sea. He also testified that the amount of fines and breeze contained in the instant shipment, which represents a substantial portion thereof, was the normal amount encountered in an ocean shipment, although when coke was shipped by rail, he said, practically no fines or breeze would be found on arrival at the destination.

It is noted that counsel for the plaintiff has proceeded on the theory that the coke may be separated for duty purposes from the fines or breeze, apparently under section 508 of the Tariff Act of 1930, which provides as follows:

SEC. 508. COMMINGLING OF GOODS.

Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

The provisions of this section are applicable to merchandise subject to tax under the revenue act, *supra,* by reason of section 601 (b) thereof, which provides, so far as pertinent, that such tax—

* * * shall be treated for the purpose of all provisions of law relating to the customs revenue as a duty imposed by such [Tariff] Act * * *.

The question of whether coke and the fines or breeze resulting therefrom can be considered commingled goods so as to be subject to the provisions of section 508, *supra,* is not altogether free from doubt, as it may well be that the fines and breeze are in the nature of an impurity usually found in coke for which, under section 507 of the Tariff Act of 1930, no allowance may be made, or, in fact, consist merely of damaged coke. However, even if it be considered that the provisions of section 508 may be applied to the situation at bar, we are satisfied that plaintiff has not made out a *prima facie* case in support of its claim thereunder.

It appears that in order to ascertain the quantity of coke and the quantity of fines or breeze contained in the shipment, plaintiff caused a screen to be erected on one of the five hatches of the importing vessel, and that every pound of coke and fines and breeze in that hatch passed over or through the screen, with the result that 198,520 pounds of fines and breeze were segregated from the coke. From the testimony of the witness Brumley it would appear that such screening was done with the purpose of ascertaining the average amount of fines and breeze included in the shipment, since he stated that all hatches contained the same quantity of coke and used the same loading and unloading facilities.

The quantity of coke taken from that hatch is not given anywhere in the record, but since the entire shipment consisted of 8,955,800 pounds of coke, including the fines and breeze, and there were five hatches each containing the same quantity, each hatch must have contained approximately 1,791,160 pounds of coke and fines and breeze, and the 198,520 pounds of fines and breeze taken from the hatch that was screened represented 11 plus per centum of the total material contained in the hatch.

It is stipulated that after the coke left customs custody and was put in storage at the plaintiff's warehouse, the plaintiff separated 435,810 additional pounds of fines and breeze therefrom in addition to that separated at the time of unlading, which represents 6 plus per centum of the material unloaded from the four hatches not screened at the time of unloading. It follows, therefore, that the figure arrived at by screening the one hatch at the time of unloading does not represent an average for the entire shipment and cannot be relied upon.

Section 508, *supra*, requires that segregation of commingled goods must be made "under customs supervision within ten days after entry thereof." While it appears that the screening of the one hatch was done while the shipment was in customs *custody*, it does not appear that it was done under customs *supervision*, nor does it appear that it was done within 10 days after entry, as required by the statute. There does not appear to be any question but that the screening of the remaining four hatches was not done under customs supervision.

Inasmuch as the provisions of section 508 are mandatory the burden was upon plaintiff to establish at the trial that they had been complied with. In this it has failed, and recovery thereunder is barred. We note that it is alleged in the protest that "Request was made for permission to segregate, which request was denied," but no proof was offered in support of this allegation.

Judgment will issue overruling the protest in all respects.